All right, we'll proceed then to case number 4, United States v. Ahmed, 18-4-0-9-2. Good morning. Ms. Esser? Yes. Thank you. Good morning, my name is Meredith Esser, and I'm here on behalf of my client, Tawheed Ahmed. So this case presents two issues. First, whether Officer Coggle unreasonably prolonged the stop after the initial purposes of the stop were completed. And second, whether there was independent grounds for reasonable suspicion to support a dog sniff of the vehicle. I'm going to address the first issue first. So Officer Coggle unreasonably prolonged the stop after the initial purposes of the stop were completed. We're not contesting that the initial stop was valid. But I want to kind of go back and just give some context about why the vehicle was stopped in the first place. So Officer Coggle testified that he had seen a similar vehicle flee from him about nine days prior, and that was what initially prompted him to stop Mr. Ahmed's vehicle. After that happened, he made a U-turn and he goes down an alley where Mr. Ahmed's vehicle had pulled in. And Mr. Ahmed's vehicle was parked in front of the entrance to a motel. At that point, Officer Coggle does some routine checks of the vehicle. He determines that there are no warrants and the vehicle is not stolen. But he goes up to the window to further investigate some of these traffic violations, potential traffic violations. So a couple of other facts to note. Particularly, the video is actually a very vivid way of picturing what's going on. It's hard, I think, just because of all the moving parts, the different ways that the roadways are going. The scene is not, I don't think, appropriate. Not that it's not appropriately described, but a picture is worth a thousand words, and I think the video gives a really good kind of understanding of what was going on. So once Officer Coggle has determined that the identity of the driver was not the driver that he saw, that fled from him nine days prior, and once Officer Coggle determined that Mr. Ahmed had no warrants, that the vehicle was not stolen and the vehicle was purchased lawfully, the purposes of the initial stop are completed, and the stop should have ended at that point. And I think the strongest case that I have on this proposition is Rodriguez v. United States, the Supreme Court case that says the tolerable duration of police inquiries in the traffic stop context is determined by the seizure's, quote, mission, which is to address the traffic violations that warranted the stop. But wait a minute. If you have a stop and the officer is satisfied the reasons for the stop are reasonably explained by what he observes, but while he's doing that, he observes other suspicious conduct, are you telling me that because the reasons for the stop have been resolved, that the officer is unable to continue the stop if he's watching things that appear to him to be a crime? I think, so I want to be more specific. So what specific things are you referring to here? The fact that he didn't show temporary license plates. It's in the district court decision. Sure, sure. So you know them as well as I do. You should know them better than I do. So you know what I'm talking about. Yes. I want to separate out, because I think that what you're referring to kind of goes to the second issue, which is whether there was reasonable suspicion to support the dog sniff independently of whether or not if you're saying that the whole thing should have stopped once he was satisfied that this was not the driver that was previously evading him, you say everything has to stop then, even though as he's resolving that, he sees other suspicious conduct. So it does relate to this issue. So let me make sure I understand your question. Your question is, if an officer is observing other suspicious conduct during the course of the stop, can he prolong the stop specifically for investigating those suspicious actions or whatever circumstances? Is that the question? Yes. Okay. I think that in this case, there was a clear break when the stop concluded, which is when Officer Coggle returned Mr. Ahmed's driver's license to him. And at that point- Well, no, isn't that contemporaneously with the spraying of the cologne, his observation that there was no temporary place on this, and there were some other things. So- So there's no real break I didn't see in the facts. So in the video, this is why I keep reiterating the video, is I think the best kind of evidence that we have of what happened. So Officer Coggle goes up to the window, and that's when he observes the- or he says he observes the cologne and the window rolling up and down. And then he actually goes back to his- Okay, but that's at the same time he observes that this is not the same person who had evaded. Correct. So it's a contemporaneous observation of the cologne and his satisfaction this is not the same person. Correct. But then he goes back to his vehicle to do some additional investigation into, I think, the licensing and the registration of the vehicle. So, you know, I don't want to kind of speak in hypotheticals, but perhaps if before he had returned to his vehicle, if he had then started to question the passengers, I think that would go more to your question. But he's already returned to his vehicle. He's investigating the vehicle issues and the other suspicious conduct. I mean, if he was that concerned about controlling the scene or investigating that other suspicious conduct, I think that he probably should have continued to do that before he returned to his vehicle. But there's no issue of controlling the scene because up to that point, nobody is trying to get out of the car. That doesn't happen until later, right? After he returns to the suspect vehicle. That's when the front passenger tries to get out of the car. Actually, that's out of order. So what happened is he's- Sorry, Mr. Ahmed pulls into this alleyway. Officer Coggle pulls in behind him. The cars are both rolling. The alleyway is actually quite long. And so you see Mr. Ahmed's car stop in front of the entrance to the motel, and the police officer's car is still rolling at the time that the backseat passenger first tries to get out of the car. And then Officer Coggle exits the car, and she tries to get out again. She has her hands up. She says, I live here. Something to the effect of, I live here. Can I just go inside? And he says, no, get back in the car. So all that happens before he actually- It's good that you correct me. I understand now. Okay, okay. So he's interacting with Mr. Ahmed for the first time, getting the driver's license. And that's, I think, when he observes the issue with the cologne and the rolling up and down the window. And then he returns to his car to do some additional checks, and then goes back to Mr. Ahmed's window, returns the driver's license, and inspects the bill of sale. And he determines that the vehicle was purchased lawfully. And at that point, that is the point at which he then goes around the vehicle to talk to the passengers in the car. So our position is that at that point, the purposes of the initial stop, which were to ascertain the identity of the driver and do vehicle checks, had been concluded. And the additional questioning of the passengers really impermissibly extended the scope of the stop. Well, wasn't there a reasonable suspicion of a seat belt violation? How does that play into your argument? The district court did determine that there was a reasonable suspicion of a seat belt violation. Our position is that there really wasn't. And the district court didn't really make any factual findings to support that decision. I can point you to the district court's decision. She says, or I think it's a woman judge, but the district court says that there were facts in support of that. But it's actually on page 13 of the decision and page 389 of the record. It's really kind of a conclusory statement that the officer was investigating the seat belt violation. But if you actually look and see what happened, the car is stopped for a good 15 seconds before the officer can even see the front seat or the back seat passengers. Obviously, there was plenty of time for someone to unbuckle a seat belt because one of the passengers exited the car not once but twice before the officer was even at the car where he could observe the seat belt violation. And furthermore, they're pulled up. I mean, it's a dark scene. They're pulled up in front of the entrance to the motel. The cop car is behind them. It's kind of ambiguous as to whether the officer's car is even there for them because they're both at the entrance to this motel, right? And so, I mean, there's a natural inference that when you're pulling up to your final destination, the first thing you're going to do is take off your seat belt. And so our position is there was really no, I mean, the seat belt violation. So it wasn't that clearly erroneous factual finding? I think that our position is that there just weren't factual findings on that. There was a conclusion, but there was no real factual determination about that. I mean, I think that you could read the district court's decision both ways, but I think our position is that the district court didn't really make any particular factual findings on that, that the statements in the decision about the seat belt violation were pretty conclusory. And from the video and just, I keep going back to the video, but it's clear from the video that these things happen in like a very short span of time with the exception of the fact that his car is stopped for a very long time. Mr. Ahmed's car is stopped for a very long time before Officer Coggle is even in a position to view whether or not the passengers are wearing their seat belts. I'd like to follow up on your question. Let's assume that there was a seat belt violation. Does that affect this case? I think that if there is absolutely a seat belt violation, then I think... That justifies the stop, if he had seen it. And I suppose he could even ticket the driver for that violation. If there's a seat belt violation... But I thought your squawk here was that the detention after those issues had been resolved is what was unreasonable. Yes. I think it's both. I think that I have to convince you of both in order to win the case for Mr. Ahmed. So the answer to my question is yes, it would make a difference. So I think that if there's a seat belt violation, then I do think that the officer has the authority to question and ticket that person. But I think that the idea that there was even reasonable suspicion for a seat belt violation on these facts, it just does not add up. And he did not ticket. And he didn't end up ticketing her for the seat belt violation because other things happened. Is it Ms. Esser? Yes, it is. You corrected me about when there was this attempt to exit the vehicle. But there were two attempts to exit the vehicle, wasn't there? Yes. They happened very close in time. So there were two attempts. The first attempt was kind of as the officer's car was rolling and she kind of pokes her head out and he says, get back in. And then he walks to the car and she tries to do that again and says, oh, I live here. They happened pretty close in time. But, yeah, there were two attempts. But isn't doing that two times at least raise the possibility that she's trying to flee the circumstance and you don't flee unless you have a problem with a warrant or goods on you or you don't flee unless there's bad things that you're trying to avoid? I think yes, maybe in a different circumstance. But I think that later in the video you see that Officer Coggle actually recognizes her as someone who lived in that complex or had been there before or was sort of a frequent visitor. And so I think in that context, just knowing that this is potentially where she lived or she was trying to maybe go visit someone or something, it's not like a stop on the side of a highway where it would be very suspicious if someone was trying to go into the bushes. Well, it seems to me like that makes it even more suspicious because if she's fleeing, then she can flee into the house. And there are new Fourth Amendment problems then about whether or not they can enter. The thing is she's not really fleeing. She's kind of looking at the officer. She has her hands up. She's kind of asking permission. She's saying, can I go in? She's not really like turning around and running. But didn't the district court address that in saying that might be suggestive of flight? The district court says that might be suggestive of flight. So isn't that, and that's a factual finding, right? I don't know that that's a factual finding. I mean, I think that it's equivocal, right? It says it might be suggestive of flight. But I see that my time is up. So if there are no further questions. No further questions. Thank you. Thank you. Ms. Williams. Good morning, and may I please the court. Jennifer Williams for the United States. There are two independent grounds on which this court can affirm the district court's denial of the motion to suppress in this case. First, as this court has now made clear in its recent decision in Garulay, which we 28 Jade, officers are allowed to keep everyone in a car detained as long as the initial stop was valid, and they have reasonable grounds to keep investigating someone in the car. And the reason for this is officer safety. As long as officers have need to control the scene, they can detain everyone there. As Mr. Ahmed concedes that the initial stop was valid, this court has therefore answered his fundamental argument, which is that it was unreasonable for Officer Coggle to continue to detain him, not Ms. Toledo, once the officer turned his attention to investigating the passenger, Ms. Toledo's true identity. The second independent ground upon which this court can affirm the district court is that Officer Coggle had reasonable suspicion that everyone in the car, including Mr. Ahmed, was engaged in criminal activity. And because of that, Mr. Ahmed's continued detention, as well as everybody else in the car, was reasonable. And I'm happy to address either ground if this court has questions. Well, I have a couple of just factual questions. As I understood the seat belt issue, that the officer came up how long after he first saw them? Did he actually come in? Well, he sees the car on the road and then he follows it, follows it into the parking lot, immediately gets out of his car and walks up to the driver's side window. And it is at that point that he testified that he saw that the passenger was not wearing her seat belt. Well, the officer came up and, as I understand it, Solano asked Officer Coggle, why are we being stopped? Correct? And Coggle responded at that point, he looked back, he says the passengers aren't wearing seat belts or something to that effect. The two women that were there at that point protested that they had already removed their seat belts to exit the car when they parked before Officer Coggle pulled up. So they explained to him why they're not wearing a seat belt. It's the way I read the facts. At that point, two backup officers arrive, like within a couple of minutes. Within minutes. Why had they been called? They were called because Officer Coggle had concerns about the stop. He felt like he needed backup for his safety. There were a number of other factors other than the seat belt. And I can go to the second ground upon which this Court can affirm the District Court's decision, which has nothing to do with the seat belt violation. Before you go on there, are you saying that we should just discount the seat belt issue? No, not at all. And, in fact, the way I read Mr. Ahmed's reply brief, he's not even really contesting the validity of the stop as to the passenger and the seat belt violation and the investigation into her identity. His real claim is, let's assume that the stop was valid as to her, the continuation of the stop was valid as to her based on the seat belt violation. Officer Coggle should have let me and Mr. Ahmed go. But not the car. And the car. That's his claim. That the officer should have let Mr. Ahmed and the car go. But our case law indicates that if there are problems with the passengers independent, the stop can continue, correct? Yes, and that's why we 20HA'd this Court's recent decision in Garouet, which is exactly what that says. So I can continue to address the seat belt violation, but I would like to point out that at least the way I read But don't run away from it yet. Okay. Judge Lucero was asking about the facts. Ms. Esser suggests that almost contemporaneously with the officer arriving at the side of the vehicle, that the right front passenger tries to get out right then. No, that's the back seat passenger. And the back seat passenger is never questioned about her failure to wear a seat belt. She was in the back seat. Right. I'm talking about the right front passenger. No, she doesn't try to get out. It's the back seat passenger that twice tries to get out and is told by Officer Coggle to remain in the car. The strange use of words, tried to get out. Were they at their destination? The car, the initial car. Well. The driver's car, whatever. Were they at their destination? I believe the back seat passenger says that she lives in that. Yeah, they thought they were at their destination. Before an officer pulls up, they're exiting the car and tries to get out somehow implicates something terrible. Well, because what happens is, so the back seat passenger starts to get out. Officer Coggle tells her to remain in the car. So I drive up to my house. My wife is getting out to go in the house. Is that properly characterized for our purposes as tries to get out? Well, but there's more to what happens. I understand, but I mean she's exiting the car seems to be a much more neutral statement of facts that somehow imply guilt by a very act that you would otherwise normally do. I guess we're back to innocent conduct equals suspicion. I guess you're better off walking down the street acting suspicious than you are innocent. Because now, in today's world, I guess innocent conduct can be somehow converted to guilty conduct. Or so tells me Mr. Williams. Well, in this case, she starts to get out of the car. She is specifically told by the officer to remain in the car. And then she, and it's the second time that she attempts to get out of the car again. So at this point, she's not just innocently leaving the car to go into her house. She's been specifically told by a police officer to remain in the car. And she tries to get out again. And it's that aspect. I think that's a fair characterization. If she's been told, all right, stay in the car please. And she then is going to get out of the car. I think it's fair to say she tries to get out of the car. Okay, so the second time she tries to get out of the car. Okay. I'm not going to let you go on that seat belt issue. All right. So immediately as the officer is beside the car, the rear passenger tries to get out. Yes, I believe she. And, okay, did he say that he observed the seat belt violation both as to the front passenger and the rear passenger? I believe it's just the front passenger. Okay, not the rear passenger. No. So seat belts have nothing to do with her. No. Okay, that's helpful. Thank you. Because he says it's the front seat passenger who has the seat belt violation, which is why he then goes around her and asks her who she is. And that starts the inquiry into her true identity. Was the passenger and the people in the back all women? Yes. I believe there's only one person in the back. There's the driver, Mr. Ahmed, there's a female passenger, and then there's a female backseat passenger. Thank you. Well, can I, since you're pausing, can I just get you to address, I guess, your point is that as long as the officer is investigating the passenger and her seat belt, or lack thereof, and her identity, the stop can continue for all involved. Yes. I mean, that's your essential point. We have, again, as I started, I think the court can decide this case on two grounds. That is the first ground. That is what this court has said in Guruli. And that is where the seat belt violation comes into play, because it is the passenger who has the seat belt violation. The second independent ground upon which this court can affirm the district court's decision is independent reasonable suspicion as to all the passengers in the car. And those are the factors that we identified. The fact that Mr. Ahmed rolled the window up instead of down. The cologne that he observes the backseat passenger spraying. The concerns as to Ms. Toledo's identity. To the extent that I was mistaken, I thought the two women were in the backseat. There were only two women total, one in the front and one in the back. Is that correct? Yes, that is correct. So then our review of the facts, in chamber's review of the facts, is that the two women protested that they had removed their seat belt to exit the car refers to both the front and the back passenger. Yes. Is that correct? Yes. All right. Thank you very much. But the only seat belt issue you rely upon is directed at the right front passenger. Yes. And she said, I had taken my seat belt off to exit the car. Yes. Thank you. And then the district court found that the officer had reasonable suspicion that there was a seat belt violation. But did not ticket them. Well, no, because what happens is he goes to talk to her about the seat belt violation, and in order to write her a ticket, he needs to know who she is. And he, at that point, becomes suspicious that she gives him a false name and so starts the inquiry into her identity. So there were bigger things than the seat belt at that time. Yes. Yes. And the entire amount of time this all takes is 15 minutes. So from the time that he initially stops the car to the time that the dog starts to sniff is 15 minutes. I'm not sure if this is in the record, but was there an arrest of all three? I don't know that. Okay. So I talked about the second ground upon which this court can affirm, which is reasonable suspicion of all the passengers in the car, which, again, is independent of the seat belt violation. And also doesn't implicate Mr. Ahmed's argument that Officer Coggle should have released him if he only had suspicions as to the passenger. Because independently, he had reasonable suspicion as to all the occupants of the car. And all of the grounds upon which that reasonable suspicion was based have been recognized, or most of them have been specifically recognized by this court and other decisions as supporting reasonable suspicion. And specifically addressing Mr. Ahmed's primary argument before this court, at least in his briefing, this claim that he should have been released, even assuming the officer's continued detention of Ms. Toledo was reasonable, that claim has been specifically rejected by this court, most recently, in its Gurule decision. If this court has no further questions? No further questions. Thank you. Thank you. And the counsel's time has expired.